OF THE

# STATE OF NEW JERSEY

MARCH TERM, 1919.

---

HELEN GARLAND, RESPONDENT, v. THE FURST STORE,
A CORPORATION, APPELLANT.

Argued November 26, 1918—Decided May 8, 1919.

1. Where liability is made to depend at all upon notice to a party, the adversary party must establish the notice before the other is called upon to contest it.
2. A mere fall of a person on the premises of another without any evidence to show how the fall was occasioned, raises no presumption of negligence on the part of the owner, and the doctrine of *res ipsa loquitur*, which is only applicable when the thing shown speaks of the negligence of the defendant, not merely of the happening of the accident, does not apply.
3. Whether a jury is ordered by the court to inspect or examine premises as an aid in ascertaining the truth of any matter in dispute between the parties to an action under the Evidence act (*Comp. Stat.*, p. 2229, § 30), or to view any place to enable the jury better to understand the evidence given in the cause under the Jury act (*Comp. Stat.*, p. 2976, §§ 31, 35), the judgment rendered by the jury should, nevertheless, be reversed if legally unsupportable in and by the record under review, as the questions presented to an appellate court should be decided upon what appears in the record brought up from the court below, notwithstanding a view was had by the jury which tried the cause.

127

On appeal from the Supreme Court.

For the appellant, *Runyon & Autenreith* and *Walter L. McDermott.*

For the respondent, *Doherty & Kinkead* and *Richard Doherty.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This is an action at law for alleged negligence resulting in personal injuries. It was tried before Judge Cutler and a jury in the Hudson Circuit Court, and upon the trial, on motion of the appellant, the jury were permitted to view the scene of the accident. Motions to nonsuit and to direct a verdict were denied, the jury rendered a verdict for the plaintiff, and upon appeal to the Supreme Court the judgment was affirmed. From the judgment entered upon that affirmance an appeal has been taken to this court.

The complaint alleges that the defendant, in conducting a department store, maintained a slippery tiled floor in the basement, which, from its nature and from the negligent manner of its construction, was dangerous to persons walking upon it, and that it was negligently permitted to become slippery.

It appears that the plaintiff, on May 20th, 1916, went to the store of the defendant and into the shoe department in the basement. The floor, according to the plaintiff's testimony, was tile or marble, and in front of the benches where the shoes were sold were strips or runners of carpet. The plaintiff made a purchase and then proceeded to walk across the floor to the stamp desk, and using her own words: "I just walked along from where I got the package to the stamp desk, and as I got to the side to go to hand my slip, my two feet was taken and I had slipped down on my left hip." The plaintiff testified that at the spot where she fell the floor was clean. She said, "I noticed that it was clean * * *, nice and clean." The plaintiff was accompanied at the time by her

daughter. Just what caused the plaintiff to fall does not appear from the testimony; and it appears that no foreign substance, such as oil or grease, was on the floor when and where she fell. It did appear that the floor was such as may be found in bank buildings; it was made of solid concrete in 1912, was smooth and in good order; that it had been traversed by thousands every week in the four years since its construction, and that no one had ever been known to slip on it before. It is true that plaintiff's daughter said the basement floor was very slippery and that anybody could slide along it at the time her mother fell, not that it was more slippery where she fell. Floors are either smooth or rough, and smooth floors are not necessarily slippery ones.

The grounds of appeal are the refusal to nonsuit, the refusal to direct a verdict, and the affirmance of these refusals in the Supreme Court.

To sustain the judgment in this case counsel for the plaintiff-respondent urges that the proof before the jury made the defendant *prima facie* liable under the doctrine of *Phillips* v. *Library Company,* 55 *N. J. L.* 307, and *Schnatterer* v. *Bamberger,* 81 *Id.* 558.

In Phillips *v.* Library Company it was held that the owner or occupier of lands, who, by invitation, express or implied, induces persons to come upon premises is under a duty to exercise ordinary care to render them reasonably safe for such purpose, or, at least, to abstain from any act that will make the entry upon or the use of the premises dangerous. Now, it will be noted that the premises in question in this case upon which the plaintiff was invited to enter, and where the accident happened, was the floor of the basement of defendant's department store. It was made of solid concrete composition, such as are the floors of bank buildings, and it does not appear that the plaintiff slipped upon any foreign substance in the fall which she sustained and which injured her. The floor was, undoubtedly, smooth, but, apparently, was not slippery, as it had been traversed by thousands of people every week the four years since its construction, and no one had ever been known to slip there before. It would thus ap-

.pear that the premises were reasonably safe for the entry thereon of persons resorting to the store, and it is not shown that the defendant was guilty of any act which would make them dangerous. In fact there is no contention to that effect.

In Schnatterer *v.* Bamberger the plaintiff in going down steps leading to the basement of defendant's store caught the heel of her shoe in a brass nosing (originally attached to the edge of the wooden step to prevent its wear), which was loose, causing her to trip and fall, and it was held that the evidence failed to show the storekeeper had not used reasonable care in keeping the stairway safe for use, for the reason that it had not appeared that the defect had been brought to the notice of the storekeeper or had existed for such a length of time as to charge him with notice of its existence; and that in the absence of proof of one of those conditions a *prima facie* case of negligence was not established.

For aught that appears in the case at bar the defendant had no notice of the alleged slippery condition of the basement floor.

The Supreme Court in its opinion in this case remarked that the inquiry was whether there was any evidence of the existence of an unusually slippery condition, the notice thereof to the owner, if it existed, not being a contested point. This would appear to indicate that, in the opinion of the Supreme Court, notice to the defendant might be presumed, as it produced no evidence denying that it had received notice. So far as this observation purports to state a principle of law it is erroneous. It is directly contrary to the ruling in Schnatterer *v.* Bamberger. There it was held that in the absence of proof that the defect had been brought to the notice of the storekeeper, or had existed for such a length of time as to charge him with notice, a *prima facie* case of negligence was not made out. The rule is, that where liability is made to depend at all upon notice to the defendant, the plaintiff must establish the notice before the defendant is called upon to contest it; in other words, it is not to be presumed.

It is not perceived that there is any difference in the law of negligence between a person slipping on a stairway or on a floor; and in *Schnatterer* v. *Bamberger Company, supra* (at *p.* 561), this court, referring to the earlier case of De Mateo *v.* Perano, observed that evidence of the previous knowledge of the landlord of the defective condition of a roof leader was deemed an element essential to carry the case to the jury, and this was laid hold of as a reason for deciding that notice of the defective step in the Bamberger store was requisite to be brought home to the defendant in order to create liability.

Nor does *res ipsa loquitur* apply. People frequently sustain falls when and where others do not. In *Paynter* v. *Bridgeton, &c., Co.,* 67 *N. J. L.* 619, it was held that a mere fall from a street car without any evidence to show how the fall was occasioned raises no presumption of negligence on the part of the operators of the car, and that the doctrine of *res ipsa loquitur* was applicable only when the thing shown speaks of the negligence of the defendant, not merely of the happening of the accident. In *Kingsley* v. *Delaware, Lackawanna and Western Railroad Co.,* 81 *Id.* 536, Mr. Justice Minturn, speaking for this court, remarked (at *p.* 541) that out of a car filled with passengers none had been produced to testify to the inherent or obvious danger incident to alighting therefrom or that any other accident took place at that time, or at any other period, in the attempt to use the step and platform; and that the argument for negligence by the defendant in that case must proceed upon *ad hominem* lines and not upon notice to the defendant from the happening of a previous accident or from the clear obviousness of danger incident to the maintenance of a dangerous condition; and it was held in the case that the mere happening of an accident without some proof of facts from which a violation of a duty to the plaintiff by the defendant may be legitimately inferred, as a rule, will not constitute negligence. Now, in the case at bar, assuming that the floor was smooth, or even slippery, it is obvious that it was not so smooth or slippery as, for that reason, to cause falls, for if it were, there would

have been others besides that of the plaintiff, both at and before the time of her accident.

The mere fact that Mrs. Garland fell on the floor of the Furst store, without any evidence to show how the fall was occasioned, raises no presumption of negligence on the part of the owner, and the doctrine of *res ipsa loquitur*, which is only applicable when the thing shown speaks of the negligence of the defendant, not merely of the happening of the accident, does not apply. As the majority of this court said in *Cronecker* v. *Hall*, 92 *N. J. L.* 450 (at *p.* 452), that there was no testimony worthy of the designation from which it could be inferred that what the defendant's agent did was done in the scope of his master's business; so, here, it can as pertinently be remarked that there is no testimony worthy of the name which shows that the defendant was negligent.

In our opinion a nonsuit, and failing that, a direction of a verdict for the defendant should have been ordered at the trial.

But the defendant-respondent contends that as there was a jury of view the observations of the jurymen are evidence in the case, and, as a court of appeal cannot know what they saw, the verdict of the jury may not be set aside.

The Supreme Court in its opinion stated that it was argued for appellant, and with much force, that the floor was of standard material, in general use for the purpose, and that there was no evidence of any lack of ordinary care in using and maintaining it, but the difficulty about adopting that line of reasoning was that the jury went to examine the floor, at the instance of the defendant's counsel, who asserted that it was in the same condition at the time of trial as it was in when plaintiff sustained her injury; that the jury came back and returned a verdict for the plaintiff; that what they saw or felt, or both, did not appear in the printed case, and the court could not tell but that their observation disclosed a condition which, if referred back to the time of the accident, was persuasive of negligence on the defendant's part.

This was, in effect, a ruling that what the jury saw amounted to mute evidence tending to establish defendant's

negligence, and for that reason, in addition to the other one given, namely, that there was evidence of an unusually slippery floor, stated *arguendo,* the judgment was affirmed, apparently upon the theory that because the extent to which the view afforded evidence could not be known, the verdict could not be overridden even if the proofs to be found in the record were not in and of themselves sufficient to sustain the jury's finding. This we deem to be error. In our opinion, for reasons to be presently stated, a judgment should be reversed if legally unsupportable in and by the record under review, notwithstanding a view of the premises by the jury.

The respondent urges that the view by the jury was had under section 30 of the Evidence act. *Comp. Stat., p.* 2229. It is true that section 30 provides that in case it shall appear that an inspection or examination of any premises would aid in ascertaining the truth of any matter in dispute between the parties to an action, it shall be lawful for the court to order an inspection or examination of the premises by the jury or the opposite party or parties or such persons as shall be named as witnesses, which inspection or examination may be ordered either before or during the progress of the trial. This is not the jury of view statute, strictly so called. That is to be found in the Jury act. *Comp. Stat., p.* 2976, §§ 31, 35.

The inspection or examination by the jury under section 30 of the Evidence act is not accompanied with showers, as is the case under section 31 of the Jury act. That act, in section 35, provides that the court may at any time after the jury is drawn, order that the jury shall view any place, if, in the judgment of the court, such view is necessary to enable the jury better to understand the evidence given in the cause, and such view shall thereupon be had in such manner as the court shall direct. The motion in this case was for the appointment of a jury of view rather than one of inspection or examination, assuming there is any substantial difference between them. Counsel for the defendant-appellant moved for permission to have the jury go and look at the floor, and the trial judge ruled that he would allow the jury to go under the

care of an officer to view the premises, and that each side might select a man, a shower, of course, although that was not stated. Obviously, if the court ordered an inspection or examination by a party or witness under the Evidence act, either could give testimony before the jury as to what they saw; but if the jury made the inspection or examination, what they saw might aid in ascertaining the truth. That would be no more than enabling the jury better to understand the evidence by a view under the Jury act. It is quite impossible to believe that the legislature intended to place upon the statute books two schemes with reference to views by juries, one in which what they saw should be substantive evidence and the other not.

In the view we take of this question, it is unnecessary to decide to what extent an inspection or examination of premises under section 30 of the Evidence act, or view of the premises under sections 31 and 35 of the Jury act, may or may not be evidential, for, in no event, could either be conclusive and thus prevent the court from controlling the issue as matter of law.

The defendant-appellant cites two cases in this state on the question of view—*Gaunt* v. *State, 50 N. J. L.* 490, and *De Gray* v. *New York and New Jersey Tel. Co., 68 Id.* 455. Gaunt v. State is, if anything, against his position. It was there held that upon the trial of an indictment for fornication, where the bastard and the putative father were viewed by the jury, the jury might consider whether there was a resemblance or not between them, and that in such cases the proper instrument of proof is inspection by the jury and not the testimony of witnesses—that is, resemblance between the child and the putative father. But this case is not an authority, to the effect that a judgment may not be reversed, because there has been a view by the jury. Mr. Justice Garrison, who wrote the opinion, concludes with the assertion that the child was in court during the trial and the attention of the jury was directed to it, that the defendant was a witness, and that in those circumstances it was not error for the court to refuse to charge the jury that they must not con-

sider the question of resemblance at all, and that if they did consider it, it must be from the testimony from the mouths of witnesses and not from their own view. Thus it appears that the only question decided was, that it was not error for the trial judge to refuse to charge that the jury must not consider the question of resemblance, and if they did, it must be from the testimony of witnesses and not from their own view. The case, therefore, is not an authority on the precise question under discussion in the case at bar. Nor is De Gray v. New York and New Jersey Tel. Co. That was a trial of an appeal from an award of commissioners who assessed land in condemnation proceedings. The trial judge charged, among other things, that the jury might adopt the opinions of witnesses so far as reasonable, and had the right to take into consideration their own experience as to whether certain structures were detrimental to the market value of abutting property, and if, in their experience, they were, the jury would make the compensation accordingly, and if they were not, and the jury were not inclined to adopt the views that had been expressed to the contrary, their award would be proportionally less. This was held to be error for several reasons, among which was, that to avail a party of a fact known to a juror he must be sworn and examined as any other witness, so that his evidence, like that of any other witness, may be first scrutinized as to its competence and bearing upon the issue, and for the further reason that the court and parties may know upon what evidence the verdict was rendered. Under this charge the jurors were permitted to arrive at a verdict upon their personal knowledge or experience, and to be, in effect, witnesses before their co-jurors. This does not touch the question of the evidential effect of an inspection or view of given premises, or whether or not in a case where an inspection or view is had the verdict may not be set aside as against the weight of the evidence or because there was no legal evidence given on the trial which would support it.

The question being an open one in this state we are at liberty to adopt that principle which we think more consonant with reason and better calculated to serve the ends of justice.

In *Seaverns* v. *Lischinski*, 181 *Ill.* 358, Chief Justice Cartwright observed that it had never been held in Illinois that a jury might return a verdict upon their own knowledge unsupported by other evidence, whether such knowledge was acquired in or out of court by a view or otherwise, and a verdict based exclusively on knowledge so acquired would be set aside for want of substantial evidence to support it; that a verdict unsupported by sworn testimony upon disputed facts has always been successfully challenged, whether there was a view or not, and if a jury had disregarded such evidence, or there was none which a reasonable person might believe and act upon, the verdict should be set aside; that in the very nature of things it is ordinarily impossible to put in the bill of exceptions persons, places or things exhibited to a jury; that the sense in which a bill of exceptions is understood is, that the bill contains all the evidence if it contains that which was presented at the trial, although objects, persons or scenes, of which the jury may have had a view, are not contained in it; that cases where a view has been permitted which the jury might consider in arriving at their verdict, either as evidence or to enable them to construe and apply the testimony, stand on a somewhat different footing than where there has been no such view, and a verdict cannot be based alone upon seeing a rope or a building or the evidence of the senses.

In the case of *People* v. *Thorn*, 156 *N. Y.* 286, a criminal case, the New York Court of Appeals observed that if the view were a part of the trial, or was the taking of testimony upon the trial, it may be that the view could not take place in the absence of the defendant; but they were not prepared to concede that the view was a part of the trial or was the taking of evidence. The trial could not take place in the absence of the judge, jury and defendant, and yet the provision of the code did not require the judge to attend upon the jury during the time it was inspecting the premises; that it was doubtless true that jurors might draw inferences from the objects which came under their vision; that if viewing the locality during the trial were the taking of testimony,

why was not the seeing of the locality before the trial the taking of testimony? That if seeing were the taking of evidence, it would follow in every case that a juror who had seen, and was familiar with, the locality, would be incompetent to sit as a juror, for he would have taken testimony in the absence of the accused, with which he had never been confronted.

In that case the view was had under a provision in the New York code of criminal procedure, which, however, contains no peculiar feature distinguishing the view in those cases from one had in a civil cause. The case is a particularly strong one against the theory that a view by a jury constitutes the taking of evidence, because in that, a murder case, the defendant and his counsel were absent. It is true that defendant's counsel requested the view and waived the right of the defendant and himself to be present; but, after conviction of murder in the first degree, it was contended on behalf of the defendant, that the inspection was part of the trial and the taking of evidence, which could only be done in the presence of the defendant in a capital case, and that his waiver was void. It was held otherwise on the ground that the view was not a part of the trial and was not the taking of testimony.

It should be noted that the inspection or examination under section 30 of our Evidence act is to be ordered when it shall appear that such a proceeding would *aid in ascertaining the truth of any matter in dispute between the parties to an action*, not that it should be conclusive of anything or even evidence in and of itself. And the same is to be remarked of a view under sections 31 and 35 of the Jury act, where, by section 35, it is provided that the court may order that *the jury shall view any place if such view is necessary to enable the jury better to understand the evidence given in the cause.*

In our opinion the question presented to a court of review should be decided upon what appears in the record brought up to the appellate tribunal, notwithstanding that a view was had by the jury.

The judgment of the Supreme Court must be reversed, to the end that a *venire de novo* may issue.

*For affirmance*—MINTURN, BLACK, JJ.    2.

*For reversal*—THE CHANCELLOR, SWAYZE, TRENCHARD, BERGEN, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR. GARDNER, JJ.    9.