14 N.J. Super. 390 (1951)
82 A.2d 458
ALICE CLAYTON AND JAMES F. CLAYTON, PLAINTIFFS-APPELLANTS,
v.
NEW DREAMLAND ROLLER SKATING RINK, INC., AND VICTOR J. BROWN, 977-987 FRELINGHUYSEN AVE., NEWARK, NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1951.
Decided June 27, 1951.
*393 Before Judges EASTWOOD, BIGELOW and SCHETTINO.
Mr. Horace G. Davis argued the cause for the plaintiffs-appellants.
Mr. Robert L. Hood argued the cause for the defendants-respondents (Mr. William J. Egan, attorney).
The opinion of the court was delivered by EASTWOOD, J.A.D.
This is an appeal from a judgment of dismissal entered by the Essex County Court, Law Division, at the end of the plaintiffs' case, on motion of the defendants in an action for damages for injuries sustained by Alice Clayton arising out of a fall in the defendants' premises.
On October 9, 1948, plaintiff, Alice Clayton, and her husband, entered defendants' premises as paying patrons for the *394 purpose of roller skating. While skating, Mrs. Clayton fell, allegedly caused by chewing gum negligently permitted to remain on the main skating rink floor. She sustained a fracture of her left arm and was taken to the first aid room of defendants' premises where one Victor J. Brown, an officer of the defendant-corporation, attempted to set Mrs. Clayton's arm.
Plaintiff testified that there was a normal Saturday night crowd; that she was an expert skater and skated continuously for about two hours prior to her fall. During that time, she noticed nothing unusual about the floor, other than chewing gum wrappers flying around. Plaintiff's husband testified that the skating floor was dirty; that he directed the attention of his wife and friends to dirt spots on the floor, but did not observe the floor at the place of the accident.
After her fall, Mrs. Clayton was assisted to her feet by her husband and a guard and skated off the main floor, through the observation area in which there was a refreshment stand, to the first aid room. Mr. Brown was summoned and upon arrival proceeded to administer first aid to Mrs. Clayton. He manipulated plaintiff's fractured arm and applied traction to it and when asked whether or not he was a doctor, Brown replied in the negative, stating that as a prize fight manager he had experience in such matters. A splint was applied to Mrs. Clayton's arm by Brown, and she was taken to Fitkin Hospital where efforts were made to set her arm with the aid of fluoroscopic and X-ray examination. Efforts to reduce the fracture proving insufficient, bone grafts had to be performed in addition to the use of plates and screws.
In the plaintiffs' complaint they charge the defendants with (1) negligence in the operation and conduct of their premises; that (2) the defendant, Victor J. Brown, for and on behalf of himself and as servant, agent and employee of the defendant-corporation, unlawfully attempted to set the left arm of the plaintiff and acted in a capacity for which he had no skill, causing an aggravation of the injury of the *395 plaintiff, Alice Clayton; that (3) the defendant, Victor J. Brown, individually, and as servant, agent and employee of the defendant-corporation, committed an assault and battery upon the plaintiff, Alice Clayton; that (4) the defendant, Victor J. Brown, had no medical experience or capacity to treat the plaintiff for her injuries and although she requested the defendant to cease any further treatment, Brown, acting individually and as an employee of the defendant-corporation, maliciously continued to mistreat the plaintiff, Alice Clayton, causing the injuries for which she brought her action; and (5), the plaintiff, James F. Clayton, as husband of Alice Clayton, sued for his damages per quod.
The plaintiffs contend that the trial court erred in dismissing the complaint, in that jury questions were presented as to the defendants' negligence in the maintenance and operation of the roller skating rink; that the acts of defendant, Brown, were acts of negligence or assault and battery; that the trial court erroneously decided that plaintiff assumed the risks involved in the enterprise in which she was engaged; and improperly refused to allow Mrs. Clayton to testify as an expert as to proper standards of care for roller skating rinks of a size comparable to the one in question; and erroneously refused to allow the hypothetical question propounded to plaintiff's doctor.
As a general principle the proprietor of an amusement park is not an insurer of the safety of patrons and is not bound to protect them from such obvious risks as are necessarily incidental to the use of the premises or its amusement devices. The proprietor is, however, bound to exercise reasonable care and to render the premises reasonably safe and fit for the use intended. When the condition complained of results from the wear and tear incident to the normal use of the amusement or to causes that originate in the wrongful conduct of strangers, the operator must be shown to have had knowledge or notice of the condition for sufficient time before the injury to remedy the defect or to safeguard the patron from contact with it.
*396 It is stated in 52 Am. Jur., secs. 62, 63, pp. 306, 307:
"While the general rules and principles stated throughout this division apply to all theaters and public amusements alike, it is obvious that the various kinds of exhibitions, shows, resorts, devices, and mechanisms to which the public is invited for amusement and entertainment differ materially in the hazards and dangers they possess for those who use them. It follows that what amounts to due care by the owner or operator for the safety of invitees depends in any given case not only on the facts and circumstances of the particular case, but on the nature, construction, manner of operation, and the like, of the particular place of amusement, resort, device, or mechanism in suit. The care required is commensurate with the risk involved.

* * * * * * * *
Skating rinks are not ordinarily regarded as inherently dangerous or of such unusual nature as to impose on the owner or proprietor of such amusements an unusual degree of care. * * * However, the owner of a skating rink is under an active obligation to guard patrons against risks which might be reasonably anticipated."
There is nothing distinctive about the liability of owners of skating rinks apart from the general responsibility to maintain the premises in a reasonably safe condition. 98 A.L.R. 575; 168 A.L.R. 896.
In the matter sub judice, the evidence proffered by the plaintiff was to the effect that while skating on the rink gum wrappers were observed floating in the air; that Mrs. Clayton's skate struck something causing the wheel to suddenly stop; that she stumbled and fell, was assisted to her feet and helped through the spectator section to the first aid room; that the next day she observed that the skate wheel contained a sticky substance resembling chewing gum which caused her precipitation to the floor. Plaintiffs' witnesses testified that they observed dark stained spots in the skating area, but none were definitely established at the point of plaintiff's fall, nor was the substance of the spots proven. Furthermore, the evidence failed to rule out the equally possible hypothesis that the foreign substance later found on Mrs. Clayton's skate was picked up at a point between the skating area and the first aid room. There was also no *397 evidence that the substance alleged to be chewing gum was on the skating area prior to the accident, or that if it were, it existed for a sufficient period of time to constitute notice to the defendant and to show a want of reasonable care in failing to remedy the defect. Daddetto v. Barbiera, 4 N.J. Super. 479 (App. Div. 1949), certif. denied, 3 N.J. 372 (1950); Oelschlaeger v. Hahne & Co., 2 N.J. 490 (1949); Restatement, Torts, N.J. Anno., sec. 343 (1940). Cf. Spitzkopf v. Mitchell, 114 N.J.L. 160 (Sup. Ct. 1935) and Esposito v. G.O.K. Enterprises, Inc., 137 N.J.L. 400 (Sup. Ct. 1948). In the Esposito case, it was held:
"Negligence is never presumed. It is a fact that must be shown. Cleary v. Meyer Bros., 114 N.J.L. 120; 176 A. 187. On a motion for nonsuit and for a directed verdict for the defendant the rule of procedure is well established that `The court must assume as true all testimony which has been presented on behalf of the plaintiff and he must be given the benefit of all lawful deductions therefrom. If this hypothesis will support a verdict for the plaintiff the motions should be denied.' Israel v. Travelers Insurance Co., 116 N.J.L. 154; 182 A. 840. On the other hand, it has been repeatedly held by our courts, and it is likewise a well settled rule, that `where the evidence with all fair and legitimate inferences arising therefrom, is insufficient to sustain a verdict for the plaintiff, which would be set aside, if rendered, the court should direct a verdict for the defendant.' Cleary v. Meyer Bros., supra."
See also Gentile v. Pub. Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951). We are of the opinion that "There was not sufficient, positive, affirmative testimony of negligence to have warranted the submission of the issue to the jury." Esposito v. G.O.K. Enterprises, Inc., supra.
There is no evidence that Mrs. Clayton had any experience in the operation of a skating rink other than as a frequent patron, nor was there any evidence proffered as to a standard of operation for skating rinks and a deviation therefrom. We are satisfied that the trial court's exclusion of testimony by Mrs. Clayton as an expert on the standard of care in the operation of skating rinks of comparable size was proper. Our Supreme Court, in Rempfer v. Deerfield *398 Packing Corp., 4 N.J. 135 at pp. 141, 142 (1950), stated that:
"The qualifications of experts are left to the discretion of the trial court and the decision is conclusive unless clearly shown to be erroneous as a matter of law. (And cases cited therein.)
* * * The true test of admissibility of such testimony is not whether the subject matter is common or uncommon or whether many persons or few have knowledge of the matter; but it is whether the witnesses offered as experts have peculiar knowledge or experience not common to the world which renders their opinions founded on such knowledge or experience any aid to the court or jury in determining the questions at issue. Rogers, Expert Testimony (3rd ed., 1941), sec. 31. Taylor v. Town of Monroe, 43 Conn. 36 (1875)."
We are of the opinion that the trial court erred in dismissing the plaintiffs' action of assault and battery against the defendants as asserted in count three of their complaint. The defendants contend that the acts performed by Brown were an attempt to administer aid to an injured skater, barren of any intent to inflict bodily harm and in an effort to assist recovery by the injured patron. The least manual touching of the body of another against his will constitutes an "assault and battery." Moore v. Camden and Trenton Railway Co., 74 N.J.L. 498 (E. & A. 1907); Central R.R. Co. of N.J. v. Simandl, 124 N.J. Eq. 207 (Ch. 1938); affirmed 125 N.J. Eq. 91 (E. & A. 1939). "The fact that the defendants were actuated by no improper motives in doing as they did, could not be material in a case where only compensative damages were sought to be recovered. That which is, essentially, a trespass, cannot become lawful from being done with good intentions, neither can the manner of doing the thing affect its intrinsic character. If unlawful in its own nature, it must continue to be so, however carefully or skillfully it may be done." Bruch v. Carter, 32 N.J.L. 554 at p. 562 (E. & A. 1867). Moore v. Camden and Trenton Railway Co., supra; 4 Am. Jur., Assault and Battery, sec. 5, p. 128. The defendant, Victor J. Brown, concededly was not a medical doctor nor one authorized to administer bodily treatment for one suffering an injury. In the face of the protestations of Mrs. Clayton and her husband, *399 he manipulated and pulled her arm with "heavy force" causing her pain. Although his acts may have been performed with the best of intentions, it is clear that plaintiffs' proofs raised a jury question as to the unlawfulness of his acts, particularly in view of the fact that he did not obtain the consent of Mrs. Clayton. Consequently, the jury might well have found that Brown's conduct constituted an assault and battery upon her and would have warranted a verdict against Brown and his employer for the consequential damages occasioned thereby. Such is the settled rule with respect to even those who are skilled in medical science and licensed to practice as such. Mr. Justice Garrison, speaking for the Supreme Court in Bennan v. Parsonnet, 83 N.J.L. 20 (1912), stated the prevailing rule in this State at pp. 22, 23:
"The trial judge in his charge followed the opinion of Judge Brown in Mohr v. Williams, decided by the Supreme Court of Minnesota (95 Minn. 261), which, as annotated in 1 L.R.A. (N.S.) 439, correctly presents the common law rule upon the subject. That rule is thus stated in 1 Kinkead on Torts, sec. 375: `The patient must be the final arbiter as to whether he shall take his chances with the operation or take his chances of living without it. Such is the natural right of the individual which the law recognizes as a legal right. Consent therefore of an individual must be either expressly or impliedly given before a surgeon may have the right to operate.'"
In Barnett v. Bachrach, 34 A.2d 626 (Mun. Ct. of App., D.C., 1943), the New Jersey rule was given emphasis:
"We recognize and follow the rule announced in a number of cases, including the celebrated case of Schloendorff v. Society of New York Hospital, 211 N.Y. 125, 105 N.E. 92, 93, 52 L.R.A., N.S., 505, Ann. Cas. 1915C, 581, in which Justice Cardozo said: `Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages. * * * This is true, except in cases of emergency where the patient is unconscious, and where it is necessary to operate before consent can be obtained.'"
Nolan v. Kechijian, 64 A.2d 866 (Sup. Ct. R.I., 1949). The court must accept as true all evidence which supports *400 the view of the party against whom the motion is made and must give him the benefit of all inferences which may logically and legitimately be drawn therefrom in his favor. McKinney v. Public Service Interstate Transp. Co., 4 N.J. 229, 243 (1950). Where fair-minded men might honestly differ as to the conclusions to be drawn from the facts, whether controverted or uncontroverted, the question at issue should be submitted to the jury. Antonio v. Edwards, 5 N.J. 48 (1950). The plaintiffs' case should have been submitted to the jury on the question of the defendants' liability for the alleged assault and battery. Under the foregoing rules, the plaintiffs' proofs also raised factual issues for the determination of the jury with respect to the allegations of the second and fourth counts of the complaint.
Plaintiffs contend that there is error in the trial court's action in disallowing a hypothetical question propounded to their medical witness concerning the extent of aggravation of the injuries sustained by Mrs. Clayton in her fall by the acts of the defendant Brown. There was no proof as to the extent of Mrs. Clayton's injuries prior to the manipulation of her arm by Brown, nor did the doctor to whom the question was directed have any personal knowledge of the extent of the initial injury. We conclude that the trial court's action in disallowing the hypothetical question was proper.
"The opinions and conclusions of experts must be based either upon facts within their own knowledge which they detail to the jury or upon hypothetical questions embracing facts supported by the evidence and relating to the particular matters upon which the expert opinion is sought, which facts, for the purpose of the opinion, are assumed to be true." Beam v. Kent, 3 N.J. 210, at p. 215 (1949).
The judgment of dismissal is reversed with respect to the issues raised by the second, third and fourth counts of the complaint. A new trial is directed on these issues. In all other respects the judgment is affirmed. Costs to abide the event.