16 N.J. Super. 484 (1951)
85 A.2d 1
JOHN T. GAFFNEY, PLAINTIFF-APPELLANT,
v.
AMERICA ON WHEELS, AMENDED TO READ PATERSON ARENA, A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1951.
Decided November 23, 1951.
*486 Before Judges McGEEHAN, JAYNE, and WM. J. BRENNAN, JR.
Mr. Hyman W. Rosenthal argued the cause for appellant (Messrs. Marcus & Levy, attorneys; Mr. Harry Chashin, and Mr. Max D. Forrest, of counsel).
Mr. Sam Weiss argued the cause for respondent (Mr. Lewis S. Jacobson, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
The mishap in which the plaintiff sustained a bodily injury for which he sought the recovery of compensatory damages occurred on the evening of April 6, 1950, at the roller skating rink conducted by the defendant on Nineteenth Avenue in the City of Paterson.
At the conclusion of the introduction of the evidence by both plaintiff and defendant, the trial judge, on motion, directed the entry of judgment in favor of the defendant. The propriety of his judicial action in that particular constitutes the subject matter of the present appeal.
Ordinarily proof of the mere occurrence of an injurious mishap is not legally productive of an inference of negligence. Normally the presumption is to the contrary. Negligence is not an imaginative notion; it denotes elements of factuality. McCombe v. Public Service Railway Co., 95 N.J.L. 187 (E. & A. 1920); Oelschlaeger v. Hahne & Co., 2 N.J. 490 (1949); Callahan v. National Lead Co., 4 N.J. 150 (1950); Layton v. Healy, 12 N.J. Super. 459 (App. Div. 1951).
Elementary also is the principle that the duty to prove negligence rests on the shoulders of the party who alleges it, and so it has been stated with conspicuous frequency that where the evidence is equally consistent with the absence of negligence as with the existence of negligence on the part of the defendant, the plaintiff cannot prevail. Alvino v. Public Service Railway Co., 97 N.J.L. 526 (E. & A. 1922); *487 Vollkommer v. Menge, 116 N.J.L. 82 (Sup. Ct. 1935); Callahan v. National Lead Co., supra.
Whenever we are confined to the consideration of purely circumstantial evidence, the contrast between the absence or existence of negligence often becomes exceedingly subtle where the mishap is of a variety known occasionally to occur to one in the absence of any negligence on the part of another. Such situations are not uncommonly observed when the injured person has chosen to engage in some sport or pursue some type of amusement or entertainment to which certain known risks are normally incident. Vide, Gardner v. G. Howard Mitchell, Inc., 107 N.J.L. 311 (E. & A. 1931); Young v. Ross, 127 N.J.L. 211 (E. & A. 1941). Does not the pleasure of skating inhere in one's physical ability gracefully to defy the law of gravitation? Gravity so challenged oftentimes triumphs, even over the most skillful performers and amid the most unobjectionable accommodations; hence the apparent need for the maintenance of the first-aid room at skating rinks.
There is no doubt that one who conducts a skating rink is not an insurer of the safety of the patrons. It is equally indubitable that one who engages in such a business is under the duty to exercise ordinary care to render and maintain the premises which are devoted to that use reasonably safe and suitable for such intended purpose.
The circumstances of the present case in their factual setting are significantly and distinctly dissimilar to those presented in Griffin v. De Geeter, 132 N.J.L. 381 (E. & A. 1945); Clayton v. New Dreamland Roller Skating Rink, Inc., 14 N.J. Super. 390 (App. Div. 1951).
In the appendix we perceive the endeavors of counsel for the plaintiff to establish, if possible, to a prima facie degree the liability of the defendant for the plaintiff's misadventure either upon the basis that the surface of the skating area was structurally faulty or that the defendant was guilty of a culpable dereliction in the supervision and maintenance of it. The contention on behalf of the plaintiff is expressed *488 in the pretrial order as follows: "The defendant operates a skating rink or arena and the plaintiff slipped, stumbled and fell to the floor by reason of the slippery floor, which was dangerous, causing him to fall to the floor whereby he sustained personal injuries."
We have examined the transcription of the testimony to determine whether fair-minded men might have honestly differed as to the conclusions to be drawn from the facts disclosed by the testimony and whether negligence on the part of the defendant might reasonably have been inferred therefrom. Gentile v. Pub. Service Coordinated Transport, 12 N.J. Super. 45 (App.Div. 1951); Kaufman v. Pennsylvania R.R. Co., 2 N.J. 318 (1949).
The plaintiff while skating evidently fell, but none of the other witnesses at the trial saw him fall. The plaintiff graphically described his sensations: "My skates slipped right from under me," said he. "Well, the only thing I could really tell you would be like, say, an automobile; you are driving an automobile on a dry road and you happen to hit a piece of ice under your wheels all of a sudden. That is the best way I can explain it."
In the defendant's rink an area of approximately 85 x 60 feet is made available for skating. The floor is of wood. At the expiration of each period of six months the floor was thoroughly cleansed and a plastic coating was applied. The efficient utility of the plastic covering is to supply a more adhesive friction of the rollers of the skates to the surface of the floor. A new coating of the plastic substance had been applied to the floor two months or less prior to plaintiff's accident. Additionally and as an "extra precaution," a powder called resin or plaster of Paris is spread upon the plastic surface each evening before the rink is opened for patrons and again later immediately preceding the special programs.
There was no evidence from which it could logically and rationally be inferred that the wooden floor was itself defective or unlevel or that the plastic coating thereon was a substance unsuitable for the use for which it was employed. *489 There was no proof that in the manner or time of the application of the plastic covering there was a departure from the normal and generally accepted standards. Vide, Garland v. Furst Store, 93 N.J.L. 127 (E. & A. 1919); Abt v. Leeds & Lippincott Co., 109 N.J.L. 311 (E. & A. 1932); Coyne v. Mutual Grocery Co., Inc., 116 N.J.L. 36 (Sup. Ct. 1935); Blessing v. Goodman, 137 N.J.L. 395 (Sup. Ct. 1948); Bosze v. Metropolitan Life Ins. Co., 1 N.J. 5 (1948).
The argument for the appellant follows this thread: that the uncontradicted evidence established that a floor having such a covering is not slippery; that the plaintiff slipped while skating upon it; hence an inference arises that the covering was in some respect deficient.
The testimony of the plaintiff is informative.
"Q. Was that portion of the floor that you had skated to, up to the time you fell, slippery or was it just that one spot? A. Just that one spot. * * *
Q. What was the condition of the floor, as far as you observed it, in the area where you fell? A. Well, in the area where I fell I noticed the floor was very shiny. * * * To me, there was no resin on the floor in that particular spot."
The testimony in its relevancy to any causative omission of duty by the defendant seems to focus upon the distribution of the powder and its absence or insufficiency at the "particular spot" where the plaintiff fell.
Powder of this nature is presumably a preparation in the form of very fine particles which, however meticulously strewn over the dry surface of a roller skating rink, might naturally be expected to become somewhat diffused and scattered by the skaters. It was therefore the practice of the defendant, from which there was no deviation on the evening of the accident, continuously to maintain a can of the powder immediately at hand, to keep the condition of the floor under observation, and to sprinkle additional powder upon those places from which the powder happens to be dispersed by the activities of the skaters.
*490 If it were to be assumed that the circumstances might generate a reasonable inference that a lack of the powder on the particular spot at the time of the accident was the proximate cause of the plaintiff's mishap, thus a condition arising from omission rather than commission, then to establish the defendant's liability it became incumbent upon the plaintiff to disclose that the alleged hazardous condition which proximately occasioned his injury had been, in fact, brought to the previous notice of the defendant or, failing any proof of actual notice, that the harmful condition had existed for so long a time as to be, in the exercise of reasonable care, discoverable and remediable before the occurrence of the injury. Schnatterer v. Bamberger & Co., 81 N.J.L. 558 (E. & A. 1911); Thompson v. Giant Tiger Corp., 118 N.J.L. 10 (E. & A. 1937); Oelschlaeger v. Hahne & Co., supra. Such evidence is certainly absent in the present case.
The judgment is affirmed.