46 N.J. Super. 566 (1957)
135 A.2d 210
ELIZABETH B. NIERMAN AND JOSEPH NIERMAN, PLAINTIFFS-RESPONDENTS,
v.
CASINO ARENA ATTRACTIONS, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT, AND CITY OF ASBURY PARK, ETC., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1957.
Decided October 15, 1957.
*568 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Solomon Lautman argued the cause for appellant (Mr. Alan C. Sugarman, on the brief).
Mr. Seymour Margulies argued the cause for respondents (Messrs. Chazin & Chazin, attorneys; Mr. Solomon Lubow, on the brief).
The opinion of the court was delivered by HUGHES, J.A.D.
This appeal is from a judgment entered in the Law Division, in favor of plaintiffs-respondents, wife and husband, for damages for personal injury sustained by the former, the husband suing per quod. The injury, which occurred on the afternoon of February 19, 1956, brought to an unhappy end a recreational venture on which Mr. and Mrs. Nierman had embarked as patrons of an ice skating rink operated by the defendant-appellant, Casino Arena Attractions, Inc. The suit was based upon the conventional theories of causative negligence and maintenance of a nuisance on the part of the operator. The City of Asbury Park, impleaded as a defendant on the implications of its exercise of a proprietary function in leasing the premises to the operator thereof, was released by dismissal motion at trial and hence is no longer involved. The pretrial conference had settled collateral problems of operation and control by the appellant, and the status of the injured plaintiff as a business patron upon its facilities, and thus stripped the litigation to its fundamental issues for trial. The appeal questions the denial of dismissal on defense motion made after the resting of the affirmative case of the plaintiffs, and of judgment on a similar motion made at the close of the testimony, and also asserts error in the charge by which the issues were referred to the jury.
*569 The factual pattern, in the broad and liberal aspect from which the court was bound to view it in considering the defense motions (that of assuming the truth of all factual matter, and legitimate inferences arising therefrom, tending to support the plaintiffs' case, as opposed to a weighing of the evidence in the usual sense; Lancaster v. Highlands Finance Corp., 117 N.J.L. 476 (E. & A. 1937); Williams v. Sanacore, 11 N.J. Super. 51 (App. Div. 1951); Bohn v. Hudson & Manhattan R. Co., 16 N.J. 180 (1954)), was this:  The victim of the mishap was an ice skater of 30 years' experience, and having entered the appellant's premises on Sunday at about 3:00 P.M., actually skated onto the ice at about 3:15 or 3:20 P.M. The rink was oval in shape, having dimensions of about 75 by 175 feet, and she joined a group of some 200 to 225 skaters moving generally in a counterclockwise direction. She soon observed that the ice was in poor condition, soft and slushy in places, bumpy and uneven, containing rough spots and "guts" or small holes and, in other places, a mushy substance like wet snow, as distinguished from mere "shavings" of the ice. Impeded by this condition of the surface she promptly decided to leave the ice before she had completed even one turn around the rink. This decision was made when she was about halfway around, and thus she continued skating to reach the aperture through which she had entered, believing that to be the only exit. In view of the directional flow of the numerous skaters about her, this presented the only logical means of leaving the dangerous conditions which had alarmed her. When 20 or 30 feet from this goal of safety, at a place where the icy surface had degenerated so that it was actually under water, her skate dropped into a "hole" estimated at one-half to three-quarters of an inch deep and she was catapulted some ten feet into the guardrail. This violent impact caused injuries described as including a fracture of the humerus extending into the joint of the shoulder, and smaller fractures involving the tuberosities of the bone.
There was expert evidence indicating that unsmooth ice was not normal, but on the contrary a hazardous and *570 dangerous condition, and that ice-making machinery, by the process of shaving, "squeegeeing" and "toweling" the ice, together with the addition of water and the freezing thereof, leaves the surface of a rink as smooth as a mirror, or as otherwise characterized, "* * * an absolutely perfect surface * * *," looking "* * * just like a ballroom." The appellant possessed the most modern of this ice-making machinery, and claimed to have resurfaced the ice, routinely, at intervals one and one-half hours apart. On the Sunday in question there had been much activity on this rink, including private lessons (which involved gyrations and leaping techniques doing some violence to the ice) given by a professional associate of appellant, beginning at 8:00 A.M., the clearing of the rink and a resurfacing at 10:15 A.M., a "public session" beginning at 10:30 A.M. and ending at 12:30 P.M., at which time the ice was to be "remade." The professional instructor then taught his pupils again from 12:30 P.M. to 1:45 P.M., at which time the ice was scheduled to be resurfaced in anticipation of the "public session" beginning at 2:00 P.M. The next resurfacing would normally have occurred at 3:30 P.M., only moments after the accident involved, and, in fact, Mrs. Nierman testified that some minutes after her injury the rink was ordered to be cleared of skaters (although no guard or other employee had witnessed her mishap), apparently for this purpose. There had been some overlapping between the private lesson period scheduled to end at 1:45 P.M. and the "public session" beginning at 2:00 P.M. and the instructor had continued to teach his pupils while the ice was remade "around him." Appellant's manager admitted having observed the ice at some time before 3:15 P.M. and that it was not then "smooth * * * as a mirror." There was evidence that constant surveillance was ordered to be maintained by employees of the rink, not only of the decorum of the skaters for their mutual safety, but of the condition of the ice itself.
It is obvious from these references to the evidence, only a part of the mass of testimony, that several inferences of causative fault were admissible, when all of the circumstances *571 were considered in the setting of the markedly deteriorated condition of the ice described by witnesses, and causally related to the fall. These inferences could well have included a finding of inadequacy of the last previous resurfacing, or even its omission, in the light of other evidence showing incompatibility of the poor condition of the ice with a recent, efficient resurfacing; the failure of the purported inspections to disclose the hazardous condition existing at and before 3:15 P.M., in the light of the time which such conditions manifestly would take to develop; the comparative prudence of resurfacing the ice only at the stated intervals, in view of the somewhat violent treatment thereof by the expert pupils and the onslaught of users thereafter, more than 500 persons having been admitted to this rink at the afternoon "public session" on the day in question.
There was thus ample evidence from which the jury properly could conclude that appellant had been culpably negligent in (1) creating these defects, or (2) actually knowing of them and permitting the continuing hazard of their use, or (3) failing to discover their existence in the exercise of reasonable care in the form of inspection. The generally deteriorated condition of the ice distinguishes this case from instances involving a foreign substance such as chewing gum on the floor of a rink (Clayton v. New Dreamland Roller Skating Rink, Inc., 14 N.J. Super. 390 (App. Div. 1951)), or from an isolated defect of unknown duration (Gaffney v. America on Wheels, 16 N.J. Super. 484 (App. Div. 1951)). We conclude that there was ample evidence contra-indicating the control of the issues as a matter of law, and that in the circumstances their referral to the jury was eminently proper.
The appellant further contends that a case of negligence was not made out, in the absence of proof of a standard of normal or generally accepted conduct in this sphere of activity, and deviation therefrom to create a hazard of a tortious character. Without pausing to question this postulate, in view of the expert evidence taken concerning "normal" operation and conditions of skating rinks, we note that the *572 present case obviously is distinguishable from one in which the actionable negligence pleaded consists in the failure to comply with ordinarily used standards of care in particular activities, such as the operation of a darkened moving picture theatre (Falk v. Stanley Fabian Corp. of Delaware, 115 N.J.L. 141 (E. & A. 1935)), and from the "slippery floor" cases in which proof of deviation from a standard in waxing or oiling floors, a non-tortious activity per se, is appropriate (Abt v. Leeds & Lippincott Co., 109 N.J.L. 311 (E. & A. 1932); Coyne v. Mutual Grocery Co., Inc., 116 N.J.L. 36 (Sup. Ct. 1935); Blessing v. Goodman, 137 N.J.L. 395 (Sup. Ct. 1948)). In any case, the point was not urged to the court on the motions made by appellant, nor mentioned with any specificity in the argument thereof, and is not of a nature justifying consideration on this appeal. Cf. Jasion v. Preferred Accident Ins. Co. of N.Y., 113 N.J.L. 108 (E. & A. 1934); Burke v. Lincoln Transit Co., 37 N.J. Super. 433 (App. Div. 1955); R.R. 1:5-3, 2:5.
The point of appellant that the evidence was equally consistent with the hypothesis of an absence of negligence which should have been excluded to justify submission to the jury, is not only a rule adaptable to cases limited to circumstantial evidence, but is a familiar distortion of contextual significance. Austin v. Pennsylvania R.R. Co., 82 N.J.L. 416 (E. & A. 1911). As pointed out by this court in Duffy v. Cratsley, 29 N.J. Super. 141 (App. Div. 1953), "* * * all that is required of the plaintiff is that his case be so strong that a jury might properly, on grounds of probability, exclude such hypotheses."
The final caveat of appellant goes to the charge of the court, specifically to its advice to the jury that the concept of assumption of risk of dangers inherent in an amusement or sport, in this case ice skating, does not include risks brought about by defects in condition of the ice, these dangers not normally being attendant upon such amusement or sport. This excerpt is characterized as a direction to the jury that there were abnormal defects in the ice, as a matter of law. In the context of a charge that was eminently fair *573 in its delineation of all of the issues and reserving the fact-finding function exclusively to the jury, this criticism is manifestly unjustified. By charging such request the learned court fairly and justly reminded the jury of the difference between the "gravitational" risks described by this court in Gaffney v. America on Wheels, supra, and extraordinary hazards attributable to defects of the serious nature which the evidence indicated in this case.
The judgment is affirmed.