## S. L. LOCKLAND v. THE STATE.

### No. 2467.   Decided April 22, 1903.

**1.—Aggravated Assault—Evidence.**

On a trial for aggravated assault upon a sewing machine agent, where it appeared that defendant had surrendered possession of the machine to said agent, evidence that defendant retook said machine by force and violence because of prosecutor's failure to comply with his contract with regard to the repayment to prosecutor of the money he had paid on said machine, was immaterial.

**2.—Same.**

Appellant having surrendered complete possession of the machine, had no right to retake it by force and violence.

**3.—Same—Possession of Property.**

The right to protect the possession of property is limited to actual possession of the property; and where one has parted with the possession of personal property he can not regain it by means which result in homicide or assault.

**4.—Same—Evidence.**

On a trial for aggravated ·assault upon a sewing machine agent for taking possession of said machine, it was competent for the State to prove that prosecutor had, at the instance of defendant and his wife, worked on the machine and showed the wife how to operate it, and that there was no real ground for dissatisfaction as to the condition of said machine.

**5.—Same.**

On a trial for aggravated assualt growing out of the right to the possession of a sewing machine, it was competent for the State to prove, by jurors in civil suit as to the circumstances attending said assault, what the defendant and his wife had testified in that suit as to the origin and circumstances attendant upon the assault.

**6.—Same.**

When the defendant had testified as to what occurred between ·himself and prosecutor at another place some half hour after said assault, and his testimony was not controverted by the State, the court did not err in refusing to allow further testimony as to said latter occurrence.

**7.—Same—Presumption as to Deadly Character of Weapon Used.**

On a trial for aggravated assault with a pistol, where the same was not used or attempted to be used by defendant as a bludgeon, it will be presumed, in the absence of proof to the contrary, that the pistol was loaded and was a deadly weapon.

**8.—Aggravated Assault—Verdict.**

On a trial where defendant was charged with aggravated assault only, and where that issue only was submitted to the jury, a verdict finding him guilty as charged in the indictment was sufficient.

Appeal from the County ˚Court of Williamson.   Tried below before Hon. Chas. A. Wilcox, County Judge.

Appeal from a conviction of aggravated assault; penalty, a fine of $25.

Appellant was charged, by information, with aggravated assault upon Jim Lamb on the 18th day of September, 1901, with a pistol, a deadly weapon.

The evidence substantially is as follows: That Jim Lamb, the alleged assaulted party (a sewing machine agent), had about a year prior to the date of the alleged assault sold and delivered to the defendant a sewing machine for the sum of $45, taking in payment therefor the defendant's three promissory notes each for the sum of $15, and each containing a mortgage lien on the said machine to secure the payment of the notes.

That when the first of the said notes became due the defendant paid the same; and that prior to the maturity of the remaining notes the defendant wrote the said Jim Lamb the following letter:

"Jonah, Texas Sept. 1901.

"Mr. J. M. Lamb,

"Dear Sir, That Machine you sold me, my wife aint satisfied with it and dont want it a tall, and I want you to come and git it. Yours truly,

"S. L. Lockland."

That upon receiving the said letter the said Jim Lamb repaired to the defendant's house (defendant being from home at the time but arrived soon after, and went in the house and shook hands with Lamb) and took possession of and attempted to carry away the said machine without any further authority or permission from the defendant than that set out in the letter. That after the said Jim Lamb had taken the machine from the defendant's house and carried it out to his wagon, which was about thirty steps from defendant's house, the defendant went out to the wagon and Lamb handed him the two unpaid notes, and he asked Lamb how about the $15 that he had already paid Lamb on the machine, to which Lamb replied: "Do you think it is right for you to use my machine for nearly a year without paying anything for the use of it?" To this Lockland replied: "I don't know what you think, but that isn't according to your promise; you promised to come and get the machine and pay me my money back." Up to this time there was nothing but the most apparent friendly feelings between the parties; but at this point the defendant commanded the said Lamb to take the machine out of the wagon and desist from further attempting to carry same away, and Lamb refused. The testimony of the prosecuting witness Lamb is that here the defendant said: "You can't take that machine away till you pay me my money back, as you promised to do." To which Lamb answered: "I did not make any such promise." And Lamb says: "The defendant then pulled his pistol and presented it on me and said, 'God damn you, if you don't take that machine out of the wagon I will shoot you.' I refused to do so."

The evidence of the defendant as to this part of the transaction is that at the time when Lamb answered the inquiry of the defendant about the $15 paid by the defendant by saying, "Do you think that I am going to let you use my machine for nearly a year without getting any pay for the use of it?" I then told him I did not know what he thought, but that he had promised to pay back the $15 when he came for the machine. He said, 'You are a damned liar,' and started at me with his knife drawn as though he was going to strike me with it. I then drew my pistol and presented it on him and told him to stop, and he stopped. Yes, it is a fact that at the time I pulled my pistol I told Lamb that he could not take the machine away till he paid me back my $15. Lamb had just told me that he had not promised to pay me my money back and that he was going to have the machine."

The evidence of the defendant's wife to this portion of the transaction

is as follows: "Soon I heard some talking and stepped to the door; then I heard Mr. Lamb call my husband a damned liar, and saw him start at my husband with an open knife in his hand as though he were going to cut him with it. My husband then pulled his pistol and said, 'Stop! stop! or I will shoot.' Mr. Lamb stopped and at the same time said that he had not promised to pay back anything and that he was going to carry away the machine."

In reference to the knife Lamb says: "I was standing with my pocket-knife in my hand cleaning my finger nails with it." Lamb further says: "I would have carried the machine away on the said occasion if the defendant had not pulled out his pistol and threatened to shoot me if I attempted to carry same away. That is what stopped me from carrying the same away. Yes, the defendant on the said occasion when he pulled his pistol said that he would shoot me if I attempted further to carry the machine away without first paying him his $15 back. With pistol still presented defendant took the machine out of the wagon and carried it back into his house."

No further statement necessary.

*Nunn & Neal,* for appellants.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an aggravated assault, and his punishment assessed at a fine of $25; hence this appeal.

Appellant made a motion for continuance, based on the absence of David Beaver and his wife. If diligence be conceded as to these witnesses, it does not occur to us that their testimony was material. The evidence proposed to be proved by said witnesses was to the effect that they were present at the house of appellant about a month before the alleged difficulty, and heard the conversation between appellant and Lamb, in which said Lamb told defendant if at any time his wife became dissatisfied with the sewing machine he had sold defendant he (Lamb) would take back the machine and pay defendant $15 which he had originally paid on it. We do not consider said testimony material under the peculiar facts of this case, because, as we understand the testimony, prosecutor Lamb was permitted by defendant and his wife to take possession of the same, remove it from the house to the gate, some thirty or forty yards distant, and load it on his machine wagon; that is, he was in complete possession of the machine, and appellant had no right to then retake possession from him by force or violence. If it was a condition precedent to the taking said machine by Lamb, as testified by appellant and his wife, that he should repay said $15 to appellant, and appellant had insisted on the payment thereof before prosecutor took possession of the machine and removed it from the house and placed it on his wagon, then prosecutor would have had no right to have used force to get possession of the machine, and appellant could have retained

possession thereof until said condition was complied with. This is in accord with the doctrine announced in Culver v. State, 42 Texas Crim. Rep., 645. And see Singer Sewing Machine Co. v. Rios, 71 S. W. Rep., 275, 6 Texas Ct. Rep., 293. The law accords one in possession of property the right to protect such possession; but the possession must be actual, and not merely constructive; and when one has parted with the possession of personal property he may not regain it by such means as result in homicide or assault. White's Ann. Penal Code 1895, art. 680, and authorities there cited. So that, under the facts, it becomes immaterial what the stipulations between the parties were as to the right of prosecutor to take possession of said sewing machine. Although it may have been understood that the $15 should be paid by prosecutor before he took possession of the machine, appellant should have asserted his right while the machine was in his possession and in his house. This he did not do. And, notwithstanding he may have expected the prosecutor to pay him the $15 before he drove off with the machine, and was disappointed when he did not do so, yet, having lost possession, he was not authorized to draw his pistol and make an assault on prosecutor in order to regain possession. As stated, it was immaterial what the terms of the contract were in reference to possession, or what the two absent witnesses may have understood in regard to it.

Appellant objected to testimony with reference to the condition of said machine; that is, the State was permitted to show by witness Lamb and another that the machine was in good condition, and was not subject to any defects. This was objected to on the ground that this had nothing to do with the contract by which appellant agreed to return the machine, appellant and his wife's testimony showing that the only condition was that if his wife was not satisfied with it she could return it. The court explained the bill by showing that prosecutor had been sent for several times, and had come, at the instance of appellant, and worked on the machine, and showed his wife how to operate it, and that there was really no ground for dissatisfaction. It occurs to us that this testimony was relevant.

We think it was admissible for the State to prove by two of the jurors what appellant and his wife had testified, in the trial of the civil suit, as to the circumstances attending the assault; particularly to show that neither of said witnesses testified that Lamb, prosecutor, called appellant a liar, or started at him with a drawn knife, before he drew his pistol on prosecutor.

We do not believe the court erred in refusing further testimony as to what occurred between prosecutor and appellant some half hour after the alleged assault and at another place. What occurred on that occasion was proved by appellant in his cross-examination of prosecutor, and this was not controverted by the State. Aside from this, we fail to see what light it shed upon the assault alleged against appellant.

Appellant complains because the court refused to give a charge to the jury predicated on the idea that said pistol was not a deadly weapon.

The pistol was not used or attempted to be used as a bludgeon, and in the absence of proof to the contrary it will be presumed that at the time it was presented on prosecutor by appellant it was loaded and so was a deadly weapon.

Nor was it necessary for the court to charge upon simple assault, even had such a charge been presented by appellant and asked to be given, because the facts do not authorize such a charge. The verdict of the jury finding appellant guilty as charged in the indictment was sufficient. He was only charged with an aggravated assault, and only this feature of the case was submitted to the jury. Wilson v. State, decided at the present term.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*