110 N.J. Super. 454 (1970)
266 A.2d 136
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MELVIN MORGULIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1970.
Decided June 15, 1970.
*456 Before Judges GOLDMANN, LEWIS and MATTHEWS.
Mr. William Wright, Jr., argued the cause for appellant.
Mr. Arthur J. Timins, Assistant Prosecutor, argued the cause for respondent (Mr. Karl Asch, Union County Prosecutor, attorney).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Defendant appeals from County Court convictions of uttering loud and offensive language in public (N.J.S.A. 2A:170-29(1)) and of disturbing a place of assembly (N.J.S.A. 2A:170-28). He received concurrent 30-day jail sentences.
On February 7, 1969 defendant attended a high school basketball game, anticipating some form of confrontation between black students and the administration, and intent on obtaining pictures and tape recordings of the events. During the pre-game activities the mayor announced that if anyone should show disrespect for the flag by refusing to stand during the national anthem, spectators would be barred from *457 future sports events. Defendant shouted that it was illegal and unconstitutional to force anyone to stand during the ceremonies. He admits that disputes immediately flared up between himself and nearby spectators. At this point a plainclothes detective mounted the bleachers and sat next to defendant. The detective testified that nearby fans had requested defendant to be quiet; they wanted to watch the game, and some of them began to move away and express displeasure with defendant's mouthings. Defendant then gestured obscenely and loudly uttered a lewd chant: "____, ____, Gestapo, ____, ____," patently indecent language which need not be reproduced here. The detective then arrested defendant and quietly led him out of the gymnasium.
Defendant was charged as a disorderly person for uttering loud and offensive language in public, N.J.S.A. 2A:170-29(1), and for disturbing a place of assembly, N.J.S.A. 2A:170-28. After conviction in the municipal court, the matter was appealed to the County Court where, after a trial, the judge found defendant guilty on both charges.
On appeal defendant contends that the conviction under N.J.S.A. 2A:170-28 was erroneous both because the factual context of the case is not covered by that statute and because his conduct is protected by the "free speech" provisions of the First Amendment.
N.J.S.A. 2A:170-28 defines a disorderly person as anyone who "by noisy or disorderly conduct disturbs or interferes with the quiet or good order of any place of assembly, public or private, including schools, churches, libraries and reading rooms * * *." The arresting officer testified that defendant was making obscene gestures, uttering obscene language, and visibly disturbing the nearby spectators. An accompanying officer testified that numerous persons moved away from defendant. Defendant denied creating a disturbance, but the trial judge found sufficient evidence to warrant a conviction.
Defendant first urges that the conviction violates his constitutional right to free speech. He argues that the offending *458 conduct must have been his initial retort to the mayor and, relying on Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961), contends that the State may act to limit speech only in the narrowest of circumstances. We are not concerned with what he said then, but with his obscene language and gestures that followed after the game began  the real nub of the disorderly person charge.
While it must be conceded that the State may not unreasonably restrict personal freedoms  see, for example, State v. Caez, 81 N.J. Super. 315 (App. Div. 1963)  it is equally apparent that the State may protect its citizens, in the exercise of their right to peaceable assembly, from riotous or potentially dangerous disturbances. In any event, the long line of cases attempting to delineate the permissible limits of restriction are neither consistent in theory nor particularly reconcilable in practice. Moreover, it might here be noted that defendant's reliance on Garner is misplaced, for the holding in that case, a conviction of sit-in demonstrators for "breach of the peace," rested on the lack of adduced evidence that any "disturbance" had in fact occurred.
In State v. Smith, 46 N.J. 510 (1966), cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966), the court, after distinguishing boisterous behavior at a public meeting from the southern sit-in cases, commented:
* * * Callender was not denied a chance to be heard. Rather he was denied a right he seemingly claimed to interfere with the right of others to hear and be heard. He was not ordered removed because he expressed views which displeased the presiding officer. He was ordered out because, in response to the president's call for quiet, he threatened even greater disruption of this public meeting. Whether the forum be the courtroom or the chamber of the legislature itself or of a political subdivision of the State, there must be order. It is frivolous to suggest the First Amendment stands in the way of that imperative. [at 516-517]
While it is obviously less forceful to argue that "order" must be maintained at a basketball game, surely the municipality is entitled to exercise some degree of supervisory *459 control over the more disruptive elements at an interscholastic event. We find that the State presented sufficient competent and credible evidence to indicate that the totality of defendant's conduct in the bleachers was loud, offensive, disruptive and disturbing to the neighboring spectators. Certainly, the constitutional provisions guaranteeing freedom of speech do not extend to intemperate and intentional offensiveness which impinges on the rights of others. Moreover, defendant's conviction under N.J.S.A. 2A:170-28 does not rest so much on what he said or on when he chose to say it, but rather on the allegedly abusive and disruptive character of his intentional outburst.
Alternatively, defendant argues that the general factual circumstances of the case  the physical setting  do not come within the ambit of the statute. To that end defendant argues that the character of the meeting  a sporting event  was such that loud outbursts were to be expected and even encouraged. Therefore, it is urged, his outburst was neither disruptive nor unusual within the context of this "assembly." Accordingly, defendant would restrict the application of the statute to situations where solemnity or parliamentary order was required.
The statute speaks of "any place of assembly, public or private." It is established that the interpretation of what constitutes the "quiet and good order" of any gathering will depend on the character of the assembly. State v. Smith, above, 46 N.J., at 519. It is further apparent that government may impose a semblance of decorum, suitable to the given circumstances, in order to avert disorder. See United States v. Woodward, 376 F.2d 136 (7 Cir.1967). In any event, our Supreme Court has clearly stated that the application of the statute is not limited to the few examples listed in the enactment, but rather is to be applied generally to any assembly, although, as noted, the permissible limits of conduct will depend on the nature of the meeting. State v. Smith, above, 46 N.J. at 515, 519. Surely, it cannot be contended, merely because a basketball *460 game is more noisy in nature than a legislative assembly, that spectators at the former may engage in unbridled behavior regardless of its effect on other persons in attendance. Thus, while the relative measure of "quiet or good order" is plainly to be tailored to the peculiar circumstances of the meeting, the statute, as noted, applies to "any place of assembly, public or private." Moreover, sufficient evidence was adduced to demonstrate that defendant's conduct was disruptive and disturbing to other persons attempting to view the game. Additionally, it might be observed that, unlike the case of a public hearing, defendant's actions herein were wholly unrelated, and in fact contrary, to the intended activity  a sporting event  and his outbursts tended to interfere with other persons' ability to watch the activities. See State v. Smith, above, at 515-516, 519. Accordingly, the statute is patently intended to apply to the instant case, among others, and defendant's "speech" was not herein protected from reasonable limitation.
Defendant next argues that his motion for judgment of acquittal at the end of the State's case should have been granted as to both charges because no prima facie case had been proved. More particularly, as to the charge of disturbing an assembly, he urges that the lack of specificity as to the proofs and as to the potential and inherent "danger" of his conduct was fatal to the State's case. Equally, as to the loud and offensive language charge, he argues that there was no proof that the utterance was "loud"  only that it was profane.
To satisfy the requisite elements of proof under N.J.S.A. 2A:170-28, it must be established that the accused's conduct was disruptive of an assembly of persons. See State v. Moore, 101 N.J. Super. 419 (App. Div. 1968). While no nearby spectators testified that they had been disturbed by defendant's rantings, both police officers testified that defendant's actions were causing a disturbance. Thus, the evidence was sufficient to show that defendant was disorderly and that his conduct, "foreign to the nature and purpose of *461 the assembly," did disrupt the proceedings. See State v. Smith, above, at 516-517, 519. As to the relative weight to be accorded to the conflicting testimony, it is best left to the trier of fact to adjudge the credibility of the respective witnesses. State v. Taylor, 38 N.J. Super. 6, 13 (App. Div. 1955).
With regard to the loud and offensive language charge, N.J.S.A. 2A:170-29(1), it is incumbent upon the State to establish that the offending utterance was both loud and indecent or offensive. See Mullen v. State, 67 N.J.L. 451 (Sup. Ct. 1902); State v. Griffin, 92 N.J. Super. 389 (App. Div. 1966). The language defendant uttered ("____, ____, Gestapo, ____, ____"), with accompanying gestures, clearly breaches the common limits of decent speech, and the arresting officer testified that defendant uttered the mindless chant in a loud, if not shouting, voice. As to defendant's free speech argument, it has been held that obscenity is not protected by the First Amendment and that the statute of prohibition is a valid exercise of the police power. State v. Rullis, 79 N.J. Super. 221, 232 (App. Div. 1963).
Affirmed.
MATTHEWS, J.A.D. (dissenting in part).
I dissent from the majority opinion insofar as it sustains defendant's conviction under N.J.S.A. 2A:170-28.
In State v. Smith, 46 N.J. 510 (1966), cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966), the court noted:
The statute before us meets the constitutional demand. It speaks of "noisy or disorderly conduct" which "disturbs or interferes with the quiet or good order" of "any place of assembly, public or private." Surely, a man of ordinary intelligence knows the council chamber at the time of a public hearing is a public "place of assembly." So, too, such a man knows the "quiet or good order" of a place depends upon the nature and the purpose and the needs of the meeting. He also knows a legislative chamber from a barroom or a ball park and knows what kind of behavior comports with each. (46 N.J., at 519)
*462 Defendant was convicted of uttering loud and offensive language in public under N.J.S.A. 2A:170-29(1), and the record, I am satisfied, supports that conviction. The same record, however, cannot support a finding that defendant's conduct disturbed or interfered with the "quiet" or "good order" of a high school basketball game. There is no evidence, save the statements of the police that a few spectators moved from defendant's immediate area, to show that defendant disturbed or interfered with anybody. He submitted to arrest quietly. No spectator was produced at trial to support the State's claim of defendant's disruptive conduct, except those who testified on defendant's behalf contrary to the State's contentions.
N.J.S.A. 2A:170-28 does not embrace the disruption and disturbance of a few individuals among many at an assembly. It seeks to preserve the "quiet" or "good order" of a gathering, considering, as was held in Smith, above, the nature of such gathering. Defendant's conduct fell far short, in my judgment, of violating the spirit and letter of the statute.