811 A.2d 930

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. HENRY
L. CHARZEWSKI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 19, 2002—Decided December 13, 2002.

Before Judges PRESSLER, CIANCIA and AXELRAD.

*Rem Zeller Law Group*, attorneys for appellant (*Jeffrey B. Steinfeld*, of counsel and on the brief).

*Donald C. Campolo*, Acting Essex County Prosecutor, attorney for respondent (*Maryann K. Lynch*, Special Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

CIANCIA, J.A.D.

Defendant Henry L. Charzewski was found guilty in municipal court, and again after a trial de novo on the record in the Law Division, of violating *N.J.S.A.* 2C:33–8. That statute provides:

A person commits a disorderly persons offense if, with purpose to prevent or disrupt a lawful meeting, procession or gathering, he does an act tending to obstruct or interfere with it physically.

Defendant's conviction arises from his conduct at a Belleville Township council meeting. We have reviewed the trial transcripts and also listened to the audio tapes of the meeting as did the municipal court and Law Division judges. We are satisfied that the State's proofs against defendant fell short of demonstrating beyond a reasonable doubt that defendant, with a purpose to prevent or disrupt a lawful meeting, did or said anything that physically obstructed or interfered with that meeting.

During the first part of the council meeting members of the public were allowed to speak for any length of time as long as the remarks were addressed to the municipal budget. During the second part of the meeting members of the public could speak on any subject of public interest, but for no more than five minutes. Defendant spoke on both occasions.

Defendant apparently has a hearing deficit, as a result of which he speaks more loudly than other persons. During his budget comments, defendant strayed from the topic several times and was asked to restrict his remarks to budget matters. We note that defendant was not the only speaker to receive such an admonition. Defendant made statements to the effect, "[w]e're the law, we're the people, don't try to stifle us." At one point, defendant was directed to address the chair and not other persons. Defendant sat down and the meeting continued.

Defendant spoke again during the second part of the meeting, and again directed comments to individual council members. He was told several times to address his remarks to the chair and he eventually complied. Defendant exceeded his five-minute allotment by a little less than two minutes. At least one other speaker

was allowed to go on significantly in excess of five minutes. All-in-all, the council did not strictly hold speakers to the five-minute limitation. Defendant vociferously criticized the budget, the hours not worked by municipal employees, the abuse of municipal vehicles, and an apparent plan to "knock down" a municipal stadium. Defendant said the municipal budget was deceitful and corrupt and the council members should be replaced. When defendant stopped speaking the meeting continued.

A little later in the meeting, a discussion was ongoing concerning shared municipal services. One speaker, probably a council member, expressed dismay over the refusal of neighboring municipalities to allow Belleville students to use track facilities in those municipalities. Defendant interrupted to say that the council had let the Belleville municipal track go to waste. He said, "[y]ou didn't even put one gallon of paint on that municipal stadium." Defendant was warned that another outburst would result in his removal. Defendant continued to speak and the mayor asked for his removal. Defendant left the meeting voluntarily, escorted by a police officer and making a few additional remarks on his way out. The meeting continued. Two days later defendant received a criminal complaint against him brought by a police officer who was at the meeting.

*N.J.S.A.* 2C:33–8, as a criminal statute and, particularly, as a criminal statute with the potential to impinge on First Amendment rights, must be strictly construed. *State v. Vawter*, 136 *N.J.* 56, 68, 642 *A.*2d 349 (1994); *State v. Valentin*, 105 *N.J.* 14, 17–18, 519 *A.*2d 322 (1987). In *New York Times v. Sullivan*, 376 *U.S.* 254, 84 *S.Ct.* 710, 11 *L.Ed.*2d 686 (1964), Justice Brennan said:

> The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard, we have said, 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' *Roth v. United States*, 354 *U.S.* 476, 484, 77 *S.Ct.* 1304, 1308, 1 *L.Ed.*2d 1498. 'The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system.' *Stromberg v.*

*California,* 283 *U.S.* 359, 369, 51 *S.Ct.* 532, 536, 75 *L.Ed.* 1117. '(I)t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions,' *Bridges v. California,* 314 *U.S.* 252, 270, 62 *S.Ct.* 190, 197, 86 *L.Ed.* 192, and this opportunity is to be afforded for 'vigorous advocacy' no less than 'abstract discussion.' *N.A.A.C.P. v. Button,* 371 *U.S.* 415, 429, 83 *S.Ct.* 328, 9 *L.Ed.*2d 405. . . .

Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. *See Terminiello v. Chicago,* 337 *U.S.* 1, 4, 69 *S.Ct.* 894, 93 *L.Ed.* 1131; *De Jonge v. Oregon,* 299 *U.S.* 353, 365, 57 *S.Ct.* 255, 81 *L.Ed.* 278.

[376 *U.S.* at 269–271, 84 *S.Ct.* at 720–721.]

In a concurring opinion Justice Black, joined by Justice Douglas, said, "[a]n unconditional right to say what one pleases about public affairs is what I consider to be the minimum guarantee of the First Amendment." 376 *U.S.* at 297, 84 *S.Ct.* at 735.

 This is not to say that conduct at a public meeting can be unbridled. First Amendment rights are subject to reasonable time, manner and place limitations. *See Cox v. Louisiana,* 379 *U.S.* 536, 554, 85 *S.Ct.* 453, 464, 13 *L.Ed.*2d 471, 484 (1965); *State v. Smith,* 46 *N.J.* 510, 516–517, 218 *A.*2d 147, *cert. denied,* 385 *U.S.* 838, 87 *S.Ct.* 85, 17 *L.Ed.*2d 71 (1966); *State v. Morgulis,* 110 *N.J.Super.* 454, 458–459, 266 *A.*2d 136 (App.Div.1970). It is to say, though, that limitations on political speech in the context of speaking at a public governmental meeting must be narrowly drawn. The statute by its very terms restricts itself to acts that physically obstruct or interfere with the meeting. While speech may qualify as such an act, it would have to be speech intended to disrupt and capable of doing so.

In *State v. Kane,* 303 *N.J.Super.* 167, 696 *A.*2d 108 (App.Div. 1997), we upheld the constitutionality of *N.J.S.A.* 2C:33–8, and defendant does not now ask us to revisit that determination. *Kane* is the only reported decision that has addressed *N.J.S.A.* 2C:33–8, and it is of limited applicability to the present case because it focused on the spontaneous actions of the police in forcibly removing defendant from the meeting without prior di-

rection from the chair. It did not analyze what speech might qualify as disruptive.

■ The Law Division judge sought guidance in *Kane,* while realizing it was not definitive because of the factual differences. Here, the police escorted defendant out at the request of the mayor. The Law Division judge thought the mayor's request significant because in *Kane* we said that the chair of a meeting is to maintain order to accomplish the public purpose of the meeting. That is certainly true as far as it goes, but in *Kane* we were evaluating the chair's absence of a request to remove defendant in light of the police initiative to do so. We did not mean to imply that the test under *N.J.S.A.* 2C:33-8 is the chair's subjective view of whether conduct is disruptive. That is evidential, but in order to determine guilt beyond a reasonable doubt a factfinder must be satisfied as to the objectively disruptive nature of defendant's conduct. That conduct is not tested against the varying sensibilities of those who chair public meetings.

■ In our view, defendant's words were not themselves disruptive. As the Law Division judge realized, they were not "fighting words." *Compare State v. Rosenfeld,* 62 *N.J.* 594, 303 *A.*2d 889 (1973) (defendant's remarks at a public meeting in a school auditorium to discuss racial conflicts, that if whites didn't do something about the problem "then the Mother F——ing town, the M.F. county, the M.F. state and the M.F. country would burn down" did not and was not likely to incite breach of the peace); *accord Chaplinsky v. New Hampshire,* 315 *U.S.* 568, 62 *S.Ct.* 766, 86 *L.Ed.* 1031 (1942). This is not to say that only fighting words would violate the statute. As we noted in *Kane,* the comments to *N.J.S.A.* 2C:33-8 state in part:

> As noted, the section is limited to physical interference. . . . That is not to say that speech could never be physically disruptive; where an actor's speech was intended to make it impossible for the person addressing the meeting to be heard, speech would constitute a physical obstruction. Similarly, if a person with no privilege to speak in a meeting repeatedly interrupted it, he might well be in violation of the section whatever the content of his speech.

[Cannel, *New Jersey Criminal Code Annotated*, comment 2, *N.J.S.A.* 2C:33–8 (1997) (referring to Commission Commentary).]

Nothing in defendant's words demonstrates beyond a reasonable doubt a purpose to disrupt the meeting. Nor did his words have any such effect. Defendant was obviously frustrated and possibly angry, but his words were aimed at substantive conduct by the governing body that he believed was bad government. The chair, in turn, appears to have accepted defendant's statements in that context. The mayor was patient with defendant and let defendant have his say. The record reflects defendant was a "regular" at council meetings and a Belleville resident for many years. His irascible nature was understood. In our view, it cannot be said that defendant's words demonstrated beyond a reasonable doubt a purpose to disrupt. Nor did his words actually disrupt. The meeting continued on after defendant stopped speaking.

This leaves defendant's conduct that accompanied his words. He failed on numerous occasions to address the chair, he spoke a little longer than the rules permitted, he interrupted another speaker, and finally, he left the meeting voluntarily when the chair asked that he be removed. As the Law Division judge recognized, defendant's conduct presented a close question. In the context of a criminal prosecution where the right of government to conduct an orderly proceeding is balanced against an individual's rights of free speech and assembly, close calls in our view raise reasonable doubt. Defendant was loud, cantankerous, and insistent, but we do not find proof beyond a reasonable doubt of a purpose to prevent or disrupt the meeting through actions that caused physical obstruction or interference. Defendant's conduct may have been rude and excessive, but it was not criminal. Not every interruption constitutes a criminal disruption.

Defendant's judgment of conviction is reversed. A judgment of acquittal shall be entered in the Law Division.